UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 18 CR 216 |
| v. | |
| BEN BAKER | Judge Charles R. Norgle, Sr. |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits this sentencing memorandum with respect to defendant Ben Baker. For the reasons discussed below, the government respectfully recommends that the Court impose a sentence within the Guidelines range of 21 to 27 months' imprisonment.

**I.    Offense Conduct**

On or about March 3, 2017, at Chicago, in the Northern District of Illinois, Eastern Division, defendant did knowingly and intentionally distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

More specifically, from in or about March 2017 through May 2017, defendant distributed heroin, fentanyl and a fentanyl analogue to an individual who, unbeknownst to defendant at the time, was cooperating with law enforcement ("CS").

March 3, 2017 Distribution of Heroin to CS

On or about March 3, 2017, defendant and CS met inside defendant's house on the 6200 block of South Rhodes Street, in Chicago (the "Ben Baker Residence") at approximately 10:10 a.m. Inside the Ben Baker Residence, defendant distributed to CS a small Ziploc bag, which defendant knew contained user quantities of heroin. Defendant then asked CS to test the quality of the heroin so defendant could report back to his supplier. CS asked defendant for an additional 4 grams of heroin, and Ben Baker Responded, "They [each gram of heroin] 70 dollars a piece." CS asked when he/she could pick up the heroin. Defendant responded that he was planning on calling his supplier and assumed the supplier would be at the Ben Baker Residence within an hour. Defendant told CS to call him later that day to set up the additional heroin purchase. The Ziploc bag defendant distributed to CS contained 0.4 grams of heroin.

Defendant called CS at approximately 3:38 p.m. and told CS to return to the Ben Baker Residence in one hour. CS returned to the Ben Baker Residence at approximately 4:31 p.m., and, once inside, CS gave defendant $350. In return, defendant distributed to CS a bag containing a rocklike substance, which defendant knew to be heroin. Defendant then told CS that he did not add a cutting agent to dilute the quality of the heroin he provided to CS. Defendant told CS to pay an additional $100 and CS complied. The rock-like substance in the bag defendant distributed to CS contained 4.9 grams of heroin.

March 15, 2017 Distribution of Heroin to CS

On or about March 15, 2017, defendant and CS again agreed to meet at the Ben Baker Residence so that the CS could purchase heroin from defendant. At approximately 1:05 p.m., CS entered the Ben Baker Residence, and defendant handed CS a small hand knotted plastic bag containing a tan rock-like substance, which defendant knew contained heroin. CS gave defendant $400 in return, and told defendant that he/she owed defendant $50. The tan rock-like substance in the bag defendant sold to CS contained 4.9 grams of a mixture and substance containing heroin.

March 28, 2017 Distribution of Heroin to CS

On or about March 28, 2017, defendant and CS spoke by phone and again agreed to meet to the Ben Baker Residence so that CS could purchase heroin from defendant. At approximately 11:39 a.m., CS met with defendant inside the Ben Baker Residence. Once CS was inside the Ben Baker Residence, defendant handed CS one small plastic bag of a white powdery substance. CS gave defendant $500 and left the Ben Baker Residence. The white powdery substance in the bag defendant sold to CS contained 5.0 grams of a mixture and substance containing heroin.

April 6, 2017 Distribution of Heroin to CS

On or about April 6, 2017, defendant and CS spoke by telephone and defendant told that the CS that he was ready with narcotics. CS met with defendant inside the Ben Baker Residence and purchased 4.9 grams of a white powdery substance from

defendant, which defendant knew to contain a mixture and substance containing a detectable amount of fentanyl.   CS paid defendant $460 for the 4.9 grams of fentanyl.

April 25, 2017 Distribution of Heroin to CS

On or about April 25, 2017, CS met defendant near the Ben Baker Residence and defendant offered CS a small clear baggie, which defendant knew to contain a sample of heroin.   The substance in the baggie contained 0.2 grams of a mixture and substance containing heroin.

May 3, 2017 Distribution of Fentanyl and Fentanyl Analogue to CS

On or about May 3, 2017, defendant and CS spoke by phone and again agreed to meet to the Ben Baker Residence so that CS could purchase heroin from defendant. At approximately 11:15 a.m., CS met with defendant inside the Ben Baker Residence. Inside, defendant handed CS one small plastic bag of a white powdery substance. CS gave defendant $450.   Defendant counted the money and asked where the remainder of the money was.    CS told defendant she/he would bring it next time and defendant agreed.    The white powdery substance in the bag defendant sold to CS contained 5.0 grams of a mixture and substance containing detectable amounts of fentanyl and furanylfentanyl, a fentanyl analogue.

July 6, 2017 Distribution of Fentanyl and Fentanyl Analogue to CS

On or about July 6, 2017, defendant and CS spoke by telephone and arranged for CS to purchase narcotics from defendant at the Ben Baker Residence. CS purchased 4.9 grams of a chunky substance from defendant, which defendant knew

to contain a mixture and substance containing a detectable amount of heroin. CS paid defendant $500 for the 4.9 grams of heroin.

August 17, 2017 Distribution of Fentanyl and Fentanyl Analogue to CS

On or about August 17, 2017, defendant and CS spoke by telephone and arranged for CS to purchase narcotics from defendant. Defendant met the CS in defendant's car, and CS purchased 4.9 grams of a chunky powder substance from defendant, which defendant knew to contain a mixture and substance containing a detectable amount of heroin. CS paid defendant $500 for the 4.9 grams of heroin.

In total, defendant distributed at least 24.8 grams of heroin and 9.9 grams of fentanyl and furanylfentanyl to the CS as described above.

## II. Indictments and Plea

On May 9, 2018, the grand jury returned an indictment charging the defendant, Ben Baker, with four counts of knowingly and intentionally distributing a controlled substance, namely a quantity of  heroin (Counts 1-3), and a quantity of fentanyl and fentanyl analogue (Count 4) in violation of Title 21, United States Code, Section 841(a)(1). Dkt 21. On May 31, 2019, the defendant plead guilty to Count 4 of the indictment, pursuant to a Plea Agreement. Dkt. Nos. 61, 62. Defendant is scheduled to be sentenced by this Court on October 24, 2019, at 10:30 a.m. Dkt. No. 78.

## III. Calculation and Guidelines Range

A. PSR Calculation of Offense Level

Pursuant to the November 2018 Sentencing Guidelines Manual, the PSR calculates the total offense level as follows (PSR ¶¶15-24):

| 15 | Base Offense Level. USSG § 2D1.1(a)(5) and (c)(11) |
|---|---|
| -3 | Acceptance of responsibility.   USSG § E1.1(a) and (b) |
| **29** | **Total Offense Level** |

The government agrees with the PSR's calculation of the offense level.

B.     Criminal History

Probation and the government agree that the defendant's criminal history score is 3 and his criminal history category is II.   PSR at ¶37.   The defendant receives three criminal history points for being sentenced, on or about September 18, 2006, to 2 years incarceration, as a result of his conviction for unlawful use of a weapon by a felon. PSR at ¶36.   The defendant receives no criminal history points for being sentenced, on or about February 3, 2002, to 2 years of probation, as a result of his conviction for possession of a controlled substance. PSR at ¶35.   The defendant receives no criminal history points for being sentenced, on or about September 16, 1994, to six years of incarceration, as a result of his conviction for attempted murder. PSR at ¶34.   The defendant receives no criminal history points for being sentenced, on or about September 16, 1994, to 2 years of incarceration, as a result of his conviction for unlawful use of a weapon by a felon. PSR at ¶33.   The defendant receives no criminal history points for being sentenced, on or about June 4, 1990, to 18 months' probation, as a result of his conviction for manufacturing/delivering a controlled substance. PSR at ¶32.   The defendant receives no criminal history point

6

for being sentenced, on or about November 28, 1989, to 13 months of probation, as a result of his conviction for possession of a controlled substance. PSR at ¶31.

C.      Advisory Guidelines Range

Probation and the government agree that the advisory guideline range is 21-27 months' imprisonment.     PSR at ¶91.

**The §3553(a) Factors Support a Guidelines Sentence Between 21 and 27 Months' Imprisonment.**

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing.[1]    In order to determine the sentence to impose, the court must consider the statutory factors listed in § 3553(a)(1)-(7).    One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements.    § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).    For the reasons set forth below, consideration of the § 3553(a) factors reflects that a Guidelines sentence of 21-27 months' imprisonment is warranted and necessary.

A.      Seriousness, Nature and Circumstances of Offense

---

[1]Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." § 3553(a)(2)(A)-(D).

The seriousness and nature and circumstances of defendant's crimes demonstrate that a Guidelines range sentence is warranted.

Defendant, shortly after he was released from prison due to a vacated conviction, trafficked fentanyl and heroin on a regular basis over a two month period. By trafficking fentanyl and heroin, defendant's actions had the potential to harm individual drug users, each of whom could suffer serious medical issues due to these drugs, including fatalities due to overdose. The likelihood of this fatality is especially high in the case of fentanyl, a synthetic opioid that is 800-100 times stronger than morphine. The cost then expands through a society that bears the cost of treating narcotics addicts and policing the narcotics trade.

B.      History and Characteristics of Defendant

A Guideline range sentence is consistent with the history and characteristics of the defendant and will provide just punishment.

Defendant has a prior criminal conviction for unlawful use of a weapon by a felon, which placed defendant in criminal history category II. However, that criminal history category is an inadequate representation of the seriousness of defendant's criminal background. Defendant has former convictions for attempted murder, unlawful use of a weapon by a felon, delivery of narcotics and possession of narcotics, all of which fail to add to defendant's criminal history category, due to the age of the convictions.

C.      The Need to Protect the Public and Afford Adequate Deterrence and Respect for the Law

A guideline sentence of incarceration would protect the community from the

8

defendant's narcotics trafficking.

The sentence imposed should have specific and general deterrent effects. *See* 18 U.S.C. § 3553(a)(2)(B); *United States v. Mendoza*, 576 F.3d 711, 722 (7th Cir. 2009) (noting that general deterrence is a factor to consider).

Defendant was previously sentenced to six years of incarceration, two years of incarceration, and another two years of incarceration. None of these previous sentences were sufficient to deter defendant's actions in this case.

Defendant's primary motivation for narcotics trafficking appears to be monetary. A Guidelines sentence would prevent defendant from earning money through narcotics trafficking and convince him to return to legitimate employment.

It is also important to emphasize the need for general deterrence in this type of case. Far too many individuals have made the decision that the profitability in trafficking narcotics outweighs the potential cost of the punishment associated with a criminal conviction for this conduct. A Guidelines sentence provides for general deterrence by creating predictable consequences for criminal actions.

Thus, defendant's conduct justifies a Guidelines sentence of 21 to 27 months' imprisonment. This sentence would reflect the seriousness of the offense and would be significant enough to deter others from engaging in similar conduct.

## V. SUPERVISED RELEASE

The government recommends that the Court impose a period of supervised release of three years. *See* PSR ¶¶93-94. During that period, the government

recommends that the Court consider imposing the following conditions of supervised release, as set forth in the PSR (¶ 94):

### A.   Mandatory Conditions, Pursuant to 18 U.S.C. § 3583(d)

- The defendant shall not commit another federal, state, or local crime.

- The defendant shall not unlawfully possess a controlled substance.

- The defendant shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on probation and at least two periodic tests thereafter, up to 104 periodic tests, during each year of supervised release for use of a controlled substance.

- The defendant shall cooperate in the collection of a DNA sample from the defendant at the direction of the United States Probation Office.

### B.   Discretionary Conditions, Pursuant to 18 U.S.C. §§ 3583(d) and 3563(b)

The following conditions should be imposed on the basis that they (1) facilitate supervision by the probation officer, which is important here to promote defendant's respect for the law and deter the defendant from future crimes; and (2) are tailored to address mental health and substance abuse issues which, if left untreated, will prevent defendant from successfully reintegrating into society:

- The defendant shall seek, and work conscientiously, at lawful employment or pursue conscientiously a course of study or vocational training that will equip him for employment.

- The defendant shall refrain from knowingly meeting or communicating with any person he knows to be engaged, or planning to engage in criminal activity and shall not knowingly meet or communicate with street gang members.

- The defendant shall refrain from excessive use of alcohol (defined as having a blood alcohol concentration greater than .08%) or any use of a narcotic drug or other controlled substance.

- Defendant shall refrain from possessing a firearm, destructive device or other dangerous weapon.

- Defendant shall participate, at the direction of a probation officer, in a substance abuse treatment program, which may include urine testing up to a maximum of 104 tests per year.

- Defendant shall not knowingly leave from the federal judicial district where defendant is being supervised unless granted permission to leave by the court or a probation officer.

- Defendant shall report to a probation officer as directed by the court or a probation officer.

- Defendant shall permit a probation officer to visit him at any reasonable time, including at home, at work, at school, at a community service location, or at any other reasonable location specified by a probation officer. Defendant shall permit confiscation of any contraband observed in plain view of a probation officer.

- Defendant shall notify the probation officer within 72 hours of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer.

- Defendant shall notify the probation officer within 72 hours if arrested or questioned by a law enforcement officer.

- Defendant shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, perform at least 20 hours of community service per week at the direction of the U.S. Probation Office until gainfully employed. The amount of community service shall not exceed 250 hours.

- Defendant shall provide a probation officer with access to any requested financial information necessary to monitor compliance with conditions of supervised release.

- Defendant shall, within 72 hours of any significant change in defendant's economic circumstance that may affect defendant's ability to pay restitution, fines or special assessments, notify defendant's probation officer of the change.

- Defendant shall file accurate income tax returns and pay all taxes, interest and penalties as required by law.

11

- Defendant shall pay to the Clerk of the Court any financial obligation ordered herein that remains unpaid at the commencement of the term of supervised release, at a rate of not less than 10% of the total of defendant's gross earnings minus federal and state income tax withholdings.

- Defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

- Defendant shall observe one Reentry Court session, as instructed by your probation officer.

These supervised release terms are narrowly tailored to facilitate supervision by the probation officer, deter the defendant from future crimes, support defendant's rehabilitation and reintegration into the community, ensure that he is engaged in lawful pursuits rather than criminal activity.

## VI.    CONCLUSION

In view of the Section 3553(a) factors, a sentence within the advisory Guideline range is fair, reasonable, and sufficient, but not greater than necessary.    For the reasons discussed below, the government respectfully recommends that the Court impose a sentence within the Guidelines range of 21 to 27 months' imprisonment.

Dated: October 4, 2019

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:    */s/ Cornelius Vandenberg*
CORNELIUS A. VANDENBERG
Assistant U.S. Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604